**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| KIM NOLET, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 20-cv-00070-LKG |
| v. ) | |
| ) | Dated: October 15, 2025 |
| APS SOLUTIONS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

The Plaintiffs in this civil action brought claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.* and the Maryland Wage and Payment Collection Act ("MWPCA"), Md. Code Ann., Lab. & Emp. §§ 3-501 *et seq.*, against the Defendants, APS Solutions, Inc. ("APS"), Vincent Caccamo and Stephanie Boldis-Caccamo, arising from their employment with APS. ECF No. 1. On September 30, 2021, the Court entered a default judgment (the "Default Judgment") against the Defendants for these claims. ECF Nos. 15 and 16. The Defendants have filed motions to reopen the case and to dismiss and to vacate the Default Judgment, pursuant to Fed. R. Civ. P. 60(b) and 12(b)(2). ECF Nos. 43, 44 and 44-1. The motions are fully briefed. ECF Nos. 43, 44, 44-1, 45, 48 and 51. No hearing is necessary to resolve the motions. L.R. 105.6 (D. Md. 2025). For the reasons that follow, the Court: (1) **GRANTS** the Defendants' motion to reopen the case (ECF No. 43) and (2) **DENIES** the Defendants' motion to dismiss and to vacate default judgment (ECF No. 44).

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.  Factual Background

The Plaintiffs in this civil action brought claims for violations of the FLSA, MWHL and MWPCA against the Defendants, arising from their employment with APS.  ECF No. 1.  In the complaint, the Plaintiffs allege that the Defendants withheld certain wages owed for work that they performed during their employment at APS.  ECF No. 1; ECF No. 13-2; at ¶ 10; ECF No. 13-3 at ¶ 10; ECF No. 13-4 at ¶ 11; ECF No. 13-5 at ¶ 11.

The Defendants failed to answer, or otherwise respond to the complaint, following proper service of the complaint and summons.  And so, on November 3, 2020, the Plaintiffs filed a motion for default judgment, which the Court granted on September 30, 2021.  ECF Nos. 13-1, 15 and 16.

On September 30, 2021, the Court entered a Default Judgment against the Defendants in the amount of $380,109.89, plus attorney's fees and costs.  ECF Nos. 15 and 16.  On March 20, 2025, the Defendants filed a motion to reopen the case and a motion to dismiss and to vacate the Default Judgment, upon the grounds that the Court lacks personal jurisdiction over the Defendants.  ECF Nos. 43 and 44.

The Parties

Plaintiff Kim Nolet is a resident of Anne Arundel County, Maryland and she was a non-exempt employee of APS from approximately August 20, 2018, to March 9, 2019.  ECF No. 1 at ¶ 6.

Plaintiff Deborah Fox is a resident of Prince George's County, Maryland and she was a non-exempt employee of APS from approximately May 25, 2018, to March 8, 2019.  *Id.* at ¶ 7.

Plaintiff Yvette Hill is a resident of Prince George's County, Maryland and she was a non-exempt employee of APS from approximately May 7, 2018, to June 12, 2019.  *Id.* at ¶ 8.

---

[1] The facts recited in this memorandum opinion are taken complaint; the Court's memorandum opinion, dated September 30, 2021, entering default judgment against the Defendants; the Defendants' motion to dismiss and to vacate default judgment and memorandum in support thereof; the Plaintiffs' response in opposition thereto; the Defendants' reply briefs; and the Plaintiffs' sur-reply.  ECF Nos. 1, 15, 43, 44, 44-1, 45, 48 and 51.

2

Plaintiff Gervon Fox is a resident of Prince George's County, Maryland and he was a non-exempt employee of APS from approximately September 28, 2018, to March 8, 2019. *Id*. at ¶ 9.

Defendant APS is a New York corporation that performs large-scale construction projects involving stadiums, amusement parks, sports venues and other venues in various locations throughout the United States. *Id*. at ¶¶ 10 and 13; ECF No. 13-2 at ¶ 2.

Defendant Vincent Caccamo is a resident of Connecticut and he is the founder and chief operating officer of APS. ECF No. 44-1 at 2; ECF No. 1 at ¶ 11.

Defendant Stephanie Boldis-Caccamo is a resident of Connecticut and she is the chief executive officer and co-owner of APS. ECF No. 44-1 at 2; ECF No. 1 at ¶ 12.

<u>The Defendants' Alleged Contacts With Maryland</u>

The Plaintiffs maintain in this case that the Defendants transacted business and performed work in the State of Maryland and that these contacts with the State are sufficient to give rise to personal jurisdiction for several reasons. *See* ECF No. 1; ECF No. 45.

First, the Plaintiffs maintain that Defendant APS hired them as employees to work in Maryland and to perform various administrative, financial and other services. ECF Nos. 45-1, 45-2, 45-3, 45-4, 45-8 and 48-9. In this regard, Plaintiff Hill states in her sworn Declaration that Defendant APS paid her and the other Plaintiffs as "W-2 employees" and withheld certain taxes that were paid to the State of Maryland. ECF No. 45-8 at ¶¶ 8-9. To support this claim, the Plaintiffs provide a copy of Plaintiff Hill's 2018 W-2 form from APS. *See* ECF No. 45-14. The Plaintiffs also provide copies of certain mail matter that they represent was received at APS's office in Beltsville, Maryland and that contains IRS notices, Maryland DLLR and other correspondence addressed to the Defendants. *See* ECF No. 45-15.

Second, the Plaintiffs maintain that the Defendants established and used an office of APS located in Beltsville, Maryland (the "Beltsville Office"). In this regard, Plaintiff Hill states in her sworn Declaration that she worked for the Defendants from May 7, 2019, to June 12, 2019, and that she was the chief financial officer for the company. ECF No. 45-8 at ¶¶ 3-4. Plaintiff Hill also states that the Defendants "tasked [her] with establishing and opening the office at 4600 Powder Mill Road, Beltsville Maryland 20705. . . ." *Id*. at ¶ 6. In addition, Plaintiff Hill states that she had "rented office space for [her] private business, Verde Gold Holdings, International,"

at this location, but "[a]fter [she] began working for APS, the office space that [she] rented became the Maryland office of APS." ECF No. 45-3 at ¶ 22.

Plaintiff Hill also states that the Beltsville Office "was an APS office, [that] was held out to third parties as an APS office and used by [herself] and [the] Co-Plaintiffs as an office from which [they] did APS work." ECF No. 45-8 at ¶ 6. To support this claim, the Plaintiffs provide a copy of the third-party rent collection vendor statement from the company Cozy, which they maintain shows that the "rent paid [by Defendant APS] to Perfect Office Solutions for the Beltsville Office." *Id*. at ¶ 12; ECF No. 45-16 at 3.

Third, the Plaintiffs allege that the Defendants hired and used a Maryland-based insurance broker to help facilitate the insurance and bonding for large construction jobs, and to purchase group health benefits for APS employees. ECF No. 45 at 7 and 10. To support this claim, the Plaintiffs provide a certificate of liability insurance and an insurance summary by United Health Care showing Defendant APS as the insured, and listing Defendant APS as having a Beltsville, Maryland address. ECF No. 45-11 at 5.

Fourth, the Plaintiffs contend that the Defendants conducted their construction business in Maryland. ECF No. 51 at 4-6. In this regard, Plaintiff Hill states in her sworn Declaration the Defendants "did engage in a business deal with the Washington Redskins related to flooring at Fed Ex Stadium in Hyattsville/ Largo, Maryland." ECF No. 51-1 at 12, ¶ 8. To support this claim, the Plaintiffs have produced a copy of check from APS and signed by Vincent Caccamo in the amount of $150,000, made payable to the Washington Redskins. ECF No. 51-1 at 16. The Plaintiffs also contend that APS represented in its business dealings that it was located in Maryland. ECF No. 51 at 4-6. In this regard, the Plaintiffs provide a copy of contract of a consulting agreement by and between APS and The Maestro Group, which states that APS is located in "Beltsville, MD 20705." ECF No. 51-1 at 1-4.

Lastly, the Plaintiffs allege that the Defendants identified them as employees of APS in the Beltsville, Maryland Office on the company's employee directory. *See* ECF No. 45 at 7. In this regard, Plaintiff Nolet states in her sworn Declaration that she worked for the Defendants from August 20, 2018, to March 8, 2019, as the benefits director and that she was based in the Beltsville Office. ECF No. 45-9 at ¶¶ 3-4 and 6. To support this claim, the Plaintiffs provide a copy of the APS Employee Directory, which shows the company's "Finance and Administration Department" as having several employees, including the Plaintiffs, who are located in Maryland.

ECF No 45-13 at 1.  The Employee Directory also lists the Beltsville Office as APS's corporate office.  *Id*.  And so, the Plaintiffs contend that these facts show that the Defendants transacted business in the State of Maryland and used or possessed real property in the State.  *See generally* ECF No. 45.

The Defendants dispute that they transacted business in the State of Maryland.  *See* ECF Nos. 44 and 48.  In this regard, Defendant Caccamo states in his sworn Declaration that "APS Solutions has never conducted business in the State of Maryland" and that "APS Solutions has never maintained any office whatsoever in the State of Maryland."  ECF No. 44-3 at ¶¶ 6-7.

The Defendants also deny that APS maintained workers' compensation insurance and business liability insurance in Maryland.  *See* ECF No. 48-1 and 48-2.  In this regard, Defendant Caccamo states in his sworn Declaration that he "was informed by an authorized agent that [the Certificate of Insurance] was obtained through an application on November 19, 2019" and that this application bears the electronic signature of Defendant Boldis-Caccamo.  ECF No. 48-2 at ¶ 3; ECF No. 48-3 at 14.  Defendant Boldis-Caccamo also states in her sworn Declaration that the insurance "application and policy were fraudulently obtained using [her] unauthorized electronic signature," that she "never obtained nor authorized anyone else to obtain this insurance policy on APS Solutions' behalf at any time whatsoever" and that "the first and only time [she had] ever seen the certificate of liability insurance was upon reviewing it as an exhibit to [the] Plaintiffs' opposition."  ECF No. 48-1 at ¶¶ 2-3.

Lastly, Defendant Caccamo states that "[t]he premium was never paid and the policy was immediately cancelled the following day."  ECF No. 48-2 at ¶ 5.  And so, the Defendants maintain that that they do not have sufficient contacts with the State of Maryland to establish personal jurisdiction.  *See generally* ECF No. 44 and 48.

### B.  Relevant Procedural History

The Plaintiffs commenced this matter on January 10, 2020.  ECF No. 1.  On August 17, 2020, the Clerk of the Court entered an Order of Default and issued a notice of default to the Defendants.  ECF Nos. 8, 9, 10 and 11.

On November 3, 2020, the Plaintiffs filed a motion for default judgment against the Defendants.  ECF No. 13.  On September 30, 2021, the Court issued a memorandum opinion and order granting the Plaintiffs' motion for default judgment and entered a default judgment against the Defendants.  ECF Nos. 15 and 16.

On March 20, 2025, the Defendants filed a motion to reopen the case and a motion to dismiss and vacate default judgment, pursuant to Fed. R. Civ. P. 60(b) and 12(b)(2). ECF Nos. 43, 44 and 44-1. On April 3, 2025, the Plaintiffs filed a response in opposition to the Defendants' motions. ECF No. 45.

On April 24, 2025, the Defendants filed a reply brief. ECF No. 48. On June 2, 2025, the Plaintiffs filed a sur-reply. ECF No. 51.

The Defendants' motions having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.   Fed R. Civ. P. 60(b)

Fed. R. Civ. P. 60(b) sets forth the grounds for obtaining relief from a judgment or order, and the Rule provides that the Court may relieve a party from a final judgment for the following reasons:

(1)   mistake, inadvertence, surprise, or excusable neglect;

(2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)   the judgment is void;

(5)   the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)   any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). But, "a Rule 60(b)(4) motion may be brought to set aside a void judgment at any time." *Garcia Fin. Grp., Inc. v. Va. Accelerators Corp.*, 3 F. App'x 86, 88 (4th Cir. 2001). Given this, "[a] judgment entered against a party over whom a court lacks personal jurisdiction is void and furnishes a ground for relief under Fed. R. Civ. P. 60(b)(4)." *Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1136 (4th Cir. 1984) (citation omitted). And so, a party may file a motion to dismiss and to vacate a judgment upon the grounds of lack of personal jurisdiction at any time. *Garcia*, 3 F. App'x at 88.

In addition, the United States Court of Appeals for the Fourth Circuit has recognized that a party seeking relief from judgment under Rule 60(b) must have a meritorious claim or defense, and the opposing party must not be unfairly prejudiced by having the judgment set aside. *See Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (citing *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir. 1993). The Fourth Circuit has also recognized that relief under Rule 60(b) is "an extraordinary remedy that should not be awarded except under exceptional circumstances." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (citing *Ackermann v. United States*, 340 U.S. 193, 202 (1950)).

### B. Fed. R. 12(b)(2) And Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction, brought pursuant to Fed. R. Civ. P. 12(b)(2), "raises an issue for the [C]ourt to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). To do so, "a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson*, 816 F.3d at 268.

When deciding a motion brought pursuant to Fed. R. Civ. P. 12(b)(2), the Court may "rule solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint." *State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 437 (D. Md. 2019) (citations omitted). And so, the Court must consider all disputed facts and make reasonable inferences in favor of the plaintiff in determining whether the plaintiff has made the requisite showing that the Court possesses personal jurisdiction over a defendant. "Under such circumstances, courts must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (citations and internal quotation marks omitted).

For the Court to assert personal jurisdiction over a non-Maryland resident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the State's long-arm statute and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). Relevant here, Maryland's long-arm

statute provides that this Court may exercise personal jurisdiction over a person, who directly or by an agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> (5) Has an interest in, uses, or possesses real property in the State; or
>
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Cts. & Jud. Proc. Code § 6-103(b). Once the Court has established that the Maryland long-arm statute confers personal jurisdiction, the Court must also consider whether the exercise of jurisdiction over Defendants would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Carefirst of Md.*, 334 F.2d at 396.

In this regard, Maryland courts "have consistently held that the State's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Id*. Given this, the Court's jurisdiction over a non-Maryland resident comports with due process if the defendant has "minimum contacts" with the forum, such that exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).

In addition, the "minimum contacts" analysis can be established either through general jurisdiction—arising from a defendant's contacts with a forum state which are so systematic and continuous as to essentially place the defendant "at home"—or specific jurisdiction—arising from an "affiliation between the forum and the underlying controversy." *Ark. Nursing Home*

8

*Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 639 (D. Md. 2020) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 582 U.S. 255, 262-63 (2017)). Relevant here, specific jurisdiction requires consideration of: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Md.*, 334 F.2d at 397 (citations omitted). And so, the Fourth Circuit has recognized that one factor indicating "purposeful availment" is whether the defendant "reached into the forum state to solicit or initiate business." *Ark. Nursing Home Acquisition*, 460 F. Supp. 3d at 639-40 (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

### IV.   ANALYSIS

The Defendants have moved to reopen this matter and to dismiss and to vacate the Default Judgment upon the grounds that the Court lacks personal jurisdiction over them in this case. ECF Nos. 43 and 44. Specifically, the Defendants argue that they do not maintain sufficient contacts in the State of Maryland to establish general personal jurisdiction, because none of the Defendants are residents of Maryland or businesses that are incorporated under the laws of the State. ECF No. 44-1 at 2. The Defendants also argue that the Plaintiffs cannot make a *prima facie* showing of specific personal jurisdiction in this case, because: (1) none of the Defendants transact any business or perform any character of work in the State of Maryland; (2) the Defendants do not supply any food, services or products within the State; and (3) the Defendants have not caused any tortious injury by any act or omission in the State. *Id*. at 3-5. And so, the Defendants request that the Court and vacate the Default Judgment and dismiss this case. *Id*. at 5-6.

The Plaintiffs counter in their response in opposition to the Defendants' motions that the Court should deny the Defendants' motion to dismiss and to vacate as untimely. ECF No. 45 at 4. Specifically, the Plaintiffs argue that they have made a *prima facie* showing that the Court may exercise specific personal jurisdiction over the Defendants, because the Defendants: (1) transacted business in the State on Maryland; (2) used or possessed real property in the State; and (3) caused tortious injury within the State. ECF No. 45 at 8. And so, the Plaintiffs request that the Court deny the Defendants' motions. *Id*. at 12.

For the reasons that follow, the Defendants' motion to dismiss and to vacate the Default Judgment is timely under Fed. R. Civ. P. 60(b)(4). The factual record before the Court, when viewed in the light most favorable to the Plaintiffs, also shows that the Plaintiffs have made a *prima facie* showing that the Court may exercise specific personal jurisdiction over the Defendants in this case. And so, the Court: (1) GRANTS the Defendants' motion to reopen the case (ECF No. 43) and (2) DENIES the Defendants' motion to dismiss and to vacate default judgment (ECF No. 44).

### A. The Defendants' Motion Is Timely

As an initial matter, the Court is satisfied that the Defendants' motion to dismiss and to vacate the Court's Default Judgment is timely. "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). But it is well-established that "a Rule 60(b)(4) motion, which seeks to set aside a void judgment, may be brought at any time." *Garcia*, 3 F. App'x at 88. In this regard, the Fourth Circuit has held that "[a] judgment entered against a party over whom a court lacks personal jurisdiction is void and furnishes a ground for relief under Fed. R. Civ. P. 60(b)(4)." *Schaffer*, 731 F.2d at 1136 (citation omitted). And so, the Defendants may file a motion to vacate a judgment upon the grounds of lack of personal jurisdiction at anytime. *Garcia*, 3 F. App'x at 88.

In this case, the Defendants seek to dismiss and to vacate the Default Judgment upon the grounds that the Court lacks personal jurisdiction, pursuant to Fed. R. Civ. P. 60(b)(4). *See* ECF Nos. 44 and 44-1. Given this, the Defendant's motion is timely, notwithstanding the passage of several years since the Court entered the Default Judgment. And so, the Court declines to deny the Defendants' motion as untimely.

### B. The Plaintiffs Have Made A *Prima Facie* Showing Of Personal Jurisdiction

Turning to the merits of the Defendants' motions, the Defendants have not shown that the Court should vacate the Default Judgment and dismiss this matter for lack of personal jurisdiction, because the Court may exercise personal jurisdiction over the Defendants in this forum. It is well-established that the burden is on the Plaintiffs to prove the existence of a ground for personal jurisdiction by a preponderance of the evidence. *Combs*, 886 F.2d at 676. To do so, the Plaintiffs need only make "a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson*, 816 F.3d at 268.

10

To establish personal jurisdiction over the non-Maryland resident Defendants in this case, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the State's long-arm statute and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Carefirst of Md*, 334 F.3d at 396 (citation omitted). Relevant here, Maryland's long-arm statute provides that this Court may exercise personal jurisdiction over a person, who directly or by an agent:

> (1) Transacts any business or performs any character of work or service in the State; . . . or
>
> (5) Has an interest in, uses, or possesses real property in the State. . .

Md. Cts. & Jud. Proc. Code § 6-103(b)(1) and (5).

Once the Court has established that the relevant long-arm statute confers personal jurisdiction, the Court must also consider whether the exercise of jurisdiction over Defendants would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Carefirst of Md.*, 334 F.2d at 396 (citation omitted). The Court's exercise of specific personal jurisdiction requires consideration of: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Md.*, 334 F.2d at 397 (citations omitted). And so, the Fourth Circuit has recognized that one factor indicating "purposeful availment" is whether the defendant "reached into the forum state to solicit or initiate business." *Ark. Nursing Home Acquisition*, 460 F. Supp. 3d at 639-40 (citation omitted).

In this case, the Plaintiffs have shown that the exercise of personal jurisdiction under Maryland's long-arm statute is appropriate for several reasons. First, the factual record before the Court shows that the Defendants have transacted business in the State of Maryland. *See* Md. Code Ann. § 6-103(b)(1). It is undisputed that the Defendants contracted with the Washington Redskins (now known as the Washington Commanders) for a $150,000 flooring contract at FedEx Field Stadium, which is located in Maryland. *See* ECF No. 51 at 6; *see generally* ECF No. 45 and 48. In this regard, Plaintiff Hill states in her sworn Declaration that the Defendants "did engage in a business deal with the Washington Redskins related to flooring at Fed Ex Stadium in Hyattsville/ Largo, Maryland." ECF No. 51-1 at 12, ¶ 8. To support this claim, the

11

Plaintiffs have produced a copy of check from APS, which is signed by Defendant Vincent Caccamo, in the amount of $150,000, and made payable to the Washington Redskins. ECF No. 51-1 at 16. The Plaintiffs have also produced a copy of another contract by and between APS and The Maestro Group, which states that APS is located in "Beltsville, MD 20705." ECF No. 51-1 at 1-4.

The undisputed factual record before the Court also shows that the Defendants hired and employed the Plaintiffs to work for Defendant APS in the State of Maryland. Notably, Plaintiff Nolet states in her sworn Declaration that she worked for the Defendants from August 20, 2018, to March 8, 2019, as the benefits director and that she was based in the Beltsville Office. ECF No. 45-9 at ¶¶ 3-4 and 6. Plaintiff Hill also states in her sworn Declaration that she worked for the Defendants from May 7, 2019, to June 12, 2019, and that she was the chief financial officer for the company and also based in the Beltsville Office. ECF No. 45-8 at ¶¶ 3-4. The Plaintiffs have also provided a copy of the APS Employee Directory, which shows the company's "Finance and Administration Department" as having several employees, including the Plaintiffs, who are located in Maryland. ECF No. 45-13 at 1. In addition, the Employee Directory lists the Beltsville Office as APS's corporate office. *Id*.

The Court also observes that the Defendants do not dispute that an APS employee based in Georgia worked with the Plaintiffs at the Beltsville Office. ECF No. 45-9 at ¶ 8; *see generally* ECF No. 45 and 48. And so, the requirements of Section 6-103(b)(1) of Maryland's long-arm statute are satisfied in this case, because the unrebutted evidence shows that the Defendants transacted business in the State of Maryland. *See* Md. Code Ann. § 6-103(b)(1).

The evidence before the Court, when viewed in the light most favorable to the Plaintiffs, also makes clear that the Defendants used real estate located in Beltsville, Maryland to operate APS. *See* Md. Code Ann. § 6-103(b)(5). In this regard, Plaintiff Hill states in her sworn Declaration that the Defendants "tasked [her] with establishing and opening the office at 4600 Powder Mill Road, Beltsville Maryland 20705. . . ." ECF No. 45-8 at ¶ 6. Plaintiff Hill also states that she had "rented office space for [her] private business, Verde Gold Holdings, International," at this location, but "[a]fter [she] began working for APS, the office space that [she] rented became the Maryland office of APS." ECF No. 45-3 at ¶ 22. In addition, the Plaintiffs have provided copies of certain mail matter that they represent was received at APS's office located in Beltsville, Maryland. *See* ECF No. 45-15.

12

Notably, the Defendants also do not dispute the authenticity of the Cozy transaction statement that the Plaintiffs have also provided to the Court, which Plaintiff Hill states in her sworn Declaration shows the rent paid by the Defendants for the use of the Beltsville Office. ECF No. 48 at 7-8; ECF No. 45-8 at ¶ 12. Nor do the Defendants dispute that Plaintiff Nolet gave Defendant Caccamo a personal loan of approximately $19,000 to cover the rent for the Beltsville Office. ECF No. 45-9 at ¶¶ 12-13; *see* ECF No. 48-1; ECF No. 48-2.

Given these facts, the factual record before the Court, when viewed in the light most favorable to the Plaintiffs, shows that the Defendants used real estate located in Maryland to operate APS, so as to establish specific personal jurisdiction under Maryland's long-arm statute. *See* Md. Code Ann. § 6-103(b)(5). And so, the Court is also satisfied that the exercise of personal jurisdiction over the Defendants is authorized under the Section 6-103(b)(5) of Maryland's long-arm statute.

As a final matter, the Court is similarly satisfied that the exercise of specific jurisdiction over the Defendants comports with due process requirements. As discussed above, the factual record shows that the Defendants transacted business in Maryland, employed the Plaintiffs in Maryland, and used real estate located in Beltsville, Maryland to operate APS. Given this, the Defendants purposefully availed themselves to Maryland and the complaint makes clear that the Plaintiffs' claims arise out of, and relate to, the Defendants' activities directed at Maryland. ECF No. 1.

Given this, the Court's exercise of personal jurisdiction over the Defendants would be constitutionally reasonable. *Int'l Shoe*, 326 U.S. at 316; *see also Ark. Nursing Home Acquisition*, 460 F. Supp. 3d at 639; *Sigala v. ABR of VA, Inc.*, 145 F. Supp. 3d 486, 491-92 (D. Md. 2015). And so, the Court DENIES the Defendants' motion to dismiss and to vacate default judgment (ECF No. 44).

## V.   CONCLUSION

For the foregoing reasons, the Court:

>    (1) **GRANTS** the Defendants' motion to reopen the case (ECF No. 43) and

    (2) **DENIES** the Defendants' motion to dismiss and vacate default judgment (ECF No. 44).

A separate Order shall issue.

**IT IS SO ORDERED.**

                                            s/Lydia Kay Griggsby
                                            LYDIA KAY GRIGGSBY
                                            United States District Judge